People of the State of Illinois, Plaintiff-Appellee, v. John Rainford (Impleaded), Defendant-Appellant.

Gen. No. 49,899.

First District, Third Division.

April 29, 1965.

Donald R. Harris, Court-Appointed Counsel, Raymond, Mayer, Jenner & Block, all of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The defendant and his wife, Florence Rainford, were indicted in March 1960 for assault with intent to commit rape and in November 1960 they were found guilty of that crime in a nonjury trial in the Criminal Court of Cook County. The trial judge sentenced the defendant to the penitentiary for a term of not less than 13 nor more than 14 years. Florence Rainford received a similar sentence. This appeal by John Rainford seeks a reversal of the judgment on the ground that the court unduly restricted his cross-examination of the witnesses for the State.

The complaining witness was the 13-year-old stepdaughter of the defendant. Her testimony was that on March 1, 1958, she lived with her mother and stepfather and six brothers and sisters in a four room home in South Holland, Illinois. She testified that on that morning her mother told her to return to the children's bedroom and undress and get into bed with her stepfather. She did this. The defendant was undressed and kneeled over her in a straddled position. At this moment her stepbrother, Bill Rainford, 17, walked through the room into a bathroom which adjoined the bedroom. The defendant then covered himself and she started to cry. After her stepbrother left the bathroom her stepfather told her to get up and get dressed. This testimony was corroborated by Bill Rainford who testified on behalf of the State. Both the defendant and his wife denied the occurrence.

The accused in a criminal prosecution should be permitted broad latitude in cross-examination of the State's witnesses. This is particularly true in sex cases where as often stated by our courts the accusation is easily made and difficult to disprove. People v. Matthews, 17 Ill2d 502, 162 NE2d 381; People v.

Scott, 407 Ill 301, 95 NE2d 315; People v. Fitzgibbons, 343 Ill 69, 174 NE 848. The general issue presented is whether the court clearly abused its discretion in limiting the efforts of the defense to cross-examine the prosecutrix and her stepbrother on matters affecting their credibility. People v. Dukes, 12 Ill2d 334, 146 NE2d 14.

The defendant cites four specific instances where the court allegedly committed prejudicial error. These shall be considered in order.

The first contention is that the trial judge refused to permit cross-examination of the complaining witness regarding a prior inconsistent statement purportedly made by her to an assistant state's attorney some two and one-half years prior to the trial. The pertinent segment of the record concerning this contention reveals the following:

"Q. Now, as a matter of fact, young lady, isn't it true that in March of 1958 you were taken to Pat Egan's office, an Assistant State's Attorney, in this building?

. . . . . .

Mr. Wolke [assistant state's attorney]: Object.
The Court: What is the purpose of the inquiry?
Mr. Brody: [attorney for the defendant]: The purpose of the inquiry is to show this Honorable Court that on another occasion she made a statement contrary to what she is making now. I have a right to bring that out.
The Court: . . . The objection will be overruled. You may ask her the question. (Pending question read by reporter.)
A. Yes, I was.
Q. And did you and he have a conversation?
A. Yes, we did.

Q. And did he ask you at that particular time whether your stepfather had sexual relations with you?
Mr. Wolke: Object.
The Court: Objection sustained.
Q. Did he at that particular time ask you if your stepfather had undressed himself and had kneeled over you in a straddling position?
Mr. Wolke: Object.
The Court: The objection is sustained. That is not the way you impeach a witness.
Q. Well, what questions did Mr. Egan ask you?
Mr. Wolke: Object.
The Court: The objection is sustained. . . ."

Evidence of prior inconsistent statements is admissible to impeach the credibility of a witness. People v. Morgan, 28 Ill2d 55, 190 NE2d 755. However, before a witness may be impeached by his prior statements a proper foundation must be laid in order to alert the witness, avoid unfair surprise, and to give the witness an opportunity to explain. People v. Moses, 11 Ill2d 84, 142 NE2d 1. A proper foundation consists in the satisfaction of two distinct requirements: the witness must be asked as to the time, place and persons involved in the alleged conversation (People v. Perri, 381 Ill 244, 44 NE2d 857); secondly, the witness must be asked whether he made a certain contrary statement at that time. People v. Boulahanis, 394 Ill 255, 68 NE2d 467; Eizerman v. Behn, 9 Ill App2d 263, 132 NE2d 788; McCormick on Evidence, c 5, § 37, p 67 (1954). Here the witness was never asked whether she made a contrary statement and the second requirement was therefore not satisfied. There is nothing in the record to show the substance of the alleged contrary statement or that such a statement was in fact made. Under these circumstances the defendant's attorney, who stated that his

purpose was to show that a contrary statement had been made, did not lay a proper foundation for impeachment and accordingly we cannot sustain the contention that the court's ruling on this point was, of and by itself, reversible error. People v. Wesley, 18 Ill2d 138, 163 NE2d 500, cert den, 364 US 845, 81 S Ct 87, 5 L Ed2d 69.

█ The defense questions, however, could reasonably be regarded as preliminary to subsequent impeachment. And, in view of the broad latitude permitted on cross-examination in sex cases, we believe that the court should have overruled the objections and given the defense an opportunity to develop the subject further. The questions merely sought information as to whether certain prior inquiries were made of the prosecutrix by an assistant state's attorney. The pertinency of these questions in relation to the truth or falsity of the complaining witness' testimony becomes apparent when it is remembered that she was being interrogated about an interview which took place in March 1958, a short time after the alleged crime. In view of the fact that the defendant was not indicted for this crime until March 1960 it is reasonable to suppose that the prosecutrix told a different story to the assistant state's attorney in March 1958 than she did to the grand jury in March 1960. Despite the fact that she had an opportunity to inform the prosecutor in March 1958 about what happened to her on March 1st she made no complaint until February 1960. The attempted impeachment of the prosecutrix was not, therefore, directed to the usual "was this question asked you and did you make this answer" type of contradiction. In order to lay a foundation for an arguable inference that the witness' testimony at the trial in 1960 differed from what was told the assistant state's attorney in 1958, it was necessary for the defense to establish the subject

318

matter of the 1958 conversation. If the subject matter concerned the crime for which the defendant was being tried, this of itself—irrespective of any specific conflicting statement—would have tended to discredit the prosecutrix. Therefore, the objections to the questions, which would have disclosed whether the conversation was about the events of March 1, 1958, should have been overruled.

■ ■ The defendant next argues that the court erred in sustaining objections to three questions which attempted to elicit from the complaining witness the admission that she continued to live in the Rainford home after the alleged occurrence. The claim is that such conduct was incompatible with the charge she was making against her parents. It is proper to cross-examine as to acts or conduct on the part of a witness which are inconsistent with what would be the natural or probable course of conduct if the witness is testifying truthfully about the occurrence in dispute. People v. Boston, 309 Ill 77, 139 NE 880; CJS, vol 98, Witnesses, § 379, pp 138–139. It has been held that evidence of the inconsistent conduct of the prosecutrix should be especially considered in cases of this kind where the charges are difficult to disprove. People v. Nunes, 30 Ill2d 143, 195 NE2d 706. While these questions were proper we do not believe the fact that a 13-year-old girl remained at home with parents after such an incident would have much probative value. There is nothing in the record to disclose where or to whom she might have turned. It is more natural and probable that a girl of her age would continue to stay with her family. This consideration, however, would go to the weight to be given the evidence rather than its admissibility and the questions should have been allowed.

The third error alleged concerns the refusal of the court to permit the defendant to cross-examine the

complaining witness with respect to her testimony at a prior trial. The defendant and his wife had previously been indicted for the rape of the same girl. They were tried and acquitted of this offense which allegedly occurred on February 15, 1958, approximately two weeks before the attempted rape under consideration here.

After establishing that the prosecutrix had testified at the earlier trial, defense counsel proceeded to inquire if she remembered certain questions asked her and her specific answers thereto. These questions and answers dealt with the alleged rape of February 15th and referred to her stepfather being undressed in the same bedroom and her stepbrother, Bill Rainford, walking into the bedroom at that time. The State objected to these questions on the grounds that there were two separate offenses and that anything she had testified to regarding the February 15th date could in no way impeach her testimony about the attempted rape of March 1. The defense counsel explained that precisely the same questions were asked of her and that the same answers were given by her in both trials; that her former testimony as to the facts surrounding the rape was identical to her testimony on direct examination pertaining to the attempted rape. The court indicated that it was only concerned with the events of March 1, 1958, and ordered all of the questions and answers stricken.

The issue drawn is whether a witness may be discredited by her prior testimony concerning one event when that prior testimony is identical with her present testimony about an independent and unrelated second event. No governing decision has been cited to us.

 Generally, a prior statement of a witness, in order to be capable of being proved for purposes of impeachment, must be materially inconsistent with

his testimony. The test to be applied in determining inconsistency has been variously stated but basically is that the inconsistent statement must have a reasonable tendency to discredit the direct testimony on a material matter. McCormick on Evidence, c 5, § 34, p 64 (1954); CJS vol 98, Witnesses, § 583, p 559. In the present instance the defense was not attempting to impeach the witness by prior inconsistent statements, but was trying to discredit her by prior identical statements, which by the very reason of their being identical, laid them open to suspicion. We see no reason why this cannot be done—why consistency cannot be shown as well as inconsistency, if the implication from the circumstances of the consistency discredits the testimony of a witness. It would be myopic to rule that inconsistency only can be material and that the inconsistency must be restricted exclusively to prior statements regarding the same event. The complaining witness purportedly testified at the former trial that an exactly same albeit extraordinary chain of events occurred in identical sequence between the same parties, under the same circumstances and before the same witness on a date two weeks before the offense which was then being tried. Such testimony would tend to cast doubt upon her statements concerning the subsequent occurrence. Common sense dictates that human behavior of such a heinous nature and involving three persons would rarely repeat itself in such precise detail. We think it evident that if her prior testimony was as indicated then the witness was either confused, or testified falsely, or was a victim of such highly unlikely circumstances that the court in its pursuit of truth should have required an explanation. While it is true that the court should be granted a fair range of discretion in determining material inconsistency, the questions and answers here posed and the offer of proof by defense counsel gave

321

every indication that the prior testimony was material to the issues and in all probability would have affected the credibility of the witness. It was therefore proper impeachment and the court's ruling was error.

Finally, defendant maintains that the court erred in not permitting cross-examination of the prosecutrix and her stepbrother concerning their hostility toward the defendants. Objections were sustained to preliminary questions asked to each of the witnesses about their ill will toward their parents. The State argues these rulings were proper because the questions referred to impertinent and collateral matters and further that no foundation was laid for them.

We cannot agree that these questions raised impertinent or collateral matters. The bias of a witness towards a party against whom he is called to testify is always pertinent on the question of his credibility. People v. Emerling, 341 Ill 424, 173 NE 474; Illinois Law and Practice, vol 37, Witnesses, § 204, p 192. It is correct that a proper foundation must be laid for subsequent impeachment for bias just as when impeaching by a prior inconsistent statement. Aneals v. People, 134 Ill 401, 25 NE 1022. However, the preliminary foundation questions were asked and the defendant had a right to inquire as to the friendly or unfriendly feeling of the witnesses toward himself. People v. Crump, 5 Ill2d 251, 125 NE2d 615; People v. McGovern, 307 Ill 373, 138 NE 632; Blanchard v. Blanchard, 191 Ill 450, 61 NE 481. Generally, the widest latitude should be allowed the defendant in his cross-examination to establish bias (People v. Naujokas, 25 Ill2d 32, 182 NE2d 700) but the court cut off all inquiry into matters with respect to which the defense was entitled to a reasonable cross-examination. This again was error. People v. Mason, 28 Ill2d 396, 192 NE2d 835.

■

The rulings of the trial court which unduly restricted efforts of the defense to impeach the State's witnesses require that the judgment of conviction be reversed and cause remanded for a new trial.

Reversed and remanded.

SULLIVAN and SCHWARTZ, JJ., concur.